IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **RANGEL OCAMPO,** on behalf of himself and all other similarly situated employees, known and unknown, | Civil Action |
| Plaintiff, | |
| v. | |
| **MAXI-MIX, INC.,** an Illinois corporation, **PUIG HOLDING COMPANY**, an Illinois corporation, **ELSTON MATERIALS, LLC,** an Illinois limited liability company, **LUIS PUIG,** individually, **ERICA PUIG**, individually, **NIDIA PUIG,** individually, **ALEX PUIG**, and **LEONARD PUIG,** individually, | No. |
| Defendants. | JURY DEMAND |

<u>**COMPLAINT**</u>

By and through their attorneys of record and on behalf of themselves and all other similarly situated employees, known and unknown, the plaintiff, RANGEL OCAMPO (the "Plaintiff"), complains of the defendants, MAXI-MIX, INC., an Illinois corporation, PUIG HOLDING COMPANY, an Illinois corporation, ELSTON MATERIALS, LLC, an Illinois limited liability company, LUIS PUIG, individually, ERICA PUIG, individually, NIDIA PUIG, individually, ALEX PUIG, individually, and LEONARD PUIG, individually, (collectively the "Defendants"). Pleading hypothetically and in the alternative, the Plaintiff alleges as follows:

I.   <u>**INTRODUCTION**</u>

1.   This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as a result of the Defendants' failure to pay the Plaintiff and other similarly situated employees of the Defendants (the "Collective Class") time and one-half

compensation for the overtime (in excess of 40 in any given week) hours they worked. In Count I, the Plaintiff brings a claim pursuant to Section 216(b) of the FLSA.

2.     In Counts II and III, the Plaintiff brings supplemental claims under the Illinois Minimum Wage Law ("IMWL"), 829 ILCS 105/1 *et seq*. and the Chicago Minimum Wage Ordinance ("CMWO") Chicago Municipal Code (Ill.) § 1-24-010 *et seq*.

## II.     THE PARTIES

3.     The Plaintiff is an individual who is domiciled in Illinois and resides within the Northern District of Illinois.

4.     The following defendants are individuals who are domiciled in Illinois and reside within the Northern District of Illinois: a) LUIS PUIG; b) ERICA PUIG; c) NIDIA PUIG; d) ALEX PUIG; and e) LEONARD PUIG.

5.     The defendant, MAXI-MIX, INC. ("MMI"), is an Illinois corporation whose: a) registered office is located at or near 1416 W. Willow Street, Chicago, IL 60642; and b) principal place of business is located at or near 1416 W. Willow Street, Chicago, IL 60642.

6.     The defendant, PUIG HOLDING COMPANY ("PHC"), is an Illinois corporation whose: a) registered office is located at or near 1414 W. Willow Street, Chicago, IL 60642; and b) principal place of business is located at or near 1414 W. Willow Street, Chicago, IL 60642.

7.     The defendant, ELSTON MATERIALS, LLC ("EML"), is an Illinois limited liability company whose: a) registered office is located at or near 3233 N. Arlington Heights Road, Arlington Heights, IL 60004; and b) principal place of business is located at or near 1420 N. Elston Avenue, Chicago, IL 60642.

8.     The following addresses are all within one-quarter mile of each other and, upon information and belief, are all part of one, contiguous compound that is owned and operated by the Defendants: a) 1416 W. Willow Street, Chicago, IL 60642; b) 1414 W. Willow Street, Chicago, IL 60642; and c) 1420 N. Elston Avenue, Chicago, IL 60642.

III.     **JURISDICTION AND VENUE**

9.     Federal question jurisdiction is conferred on this Court by Section 16(b) of the FLSA and 28 U.S.C. §1331.

10.     Venue is proper as the acts or omissions that gave rise to the claims alleged herein occurred within this judicial district.

11.     Further, venue is proper pursuant to 28 U.S.C. § 1391, because MMI, PHC, and EML have their principal places of business, at or near: a) 1416 W. Willow Street, Chicago, IL 60642; b) 1414 W. Willow Street, Chicago, IL 60642 and/or c) 1420 N. Elston Avenue, Chicago, IL 60642.

IV.     **COLLECTIVE ACTION UNDER THE FLSA**

12.     The Plaintiff brings this case as a Collective action under the FLSA on behalf of himself and the Collective Class, and in accord with Section 16(b) of the FLSA, the Plaintiff have given written consent to bring such an action (attached as **Exhibit A**).

V.     **GENERAL ALLEGATIONS**

13.     MMI, PHC and EML are all constituent parts of a fully integrated family business; and the individual defendants are all close family members (*i.e.* siblings, parents, (adult) children, aunts, uncles and/or cousins).

14.     At all times relevant to this action, the Defendants have been engaged in the business of manufacturing and selling cement, concrete, brick and related construction supplies (the "Masonry Business").

15.     As of the date this action was filed, EML's website says that it:

> provides contractors and architects the best quality masonry, brick and construction supplies at an affordable cost. We are a family-owned and operated minority business.  We are the contractors [sic] favorite masonry supplies and building material supply house in Chicago. From diamond blades to brick and concrete block, we are Chicago's number one source for masonry supplies and building materials.

16.     At all times relevant to this action, the Defendants have employed a business model wherein LUIS PUIG, ERICA PUIG and NIDIA PUIG oversee the manufacturing and operations arm of the Masonry Business, and LUIS PUIG, ALEX PUIG and LEONARD PUIG oversee the sales, marketing and distribution arm of the Masonry Business; and, upon information and belief, ERICA PUIG and LEONARD PUIG work in the Masonry Business's office, managing the books, accounts payable, accounts receivable, payroll, financing, procurement and relations with vendors.

17.     At all times relevant to this action, there has been overlap in the duties performed by the Defendants in the furtherance of their Masonry Business, which duties are described generally above.

18.     At all times relevant to this action, the Defendants structured their Masonry Business such that, in most cases, they created a separate company to be the face of each arm or constituent part of the Masonry Business.  Each of these separate companies performed related activities for a common business purpose, more specifically, the provision of "the best quality masonry, brick and construction supplies at an affordable cost."

19. At all times relevant to this action, the various arms of the Masonry Business were managed centrally by the individual defendants, whether or not these various arms were tied to allegedly separate corporations or limited liability companies.

20. At all times relevant to this action, the following business entities were part of the Defendants' Masonry Business: a) MMI; b) PHC; c) EML; d) Elston Block Company; and e) All Masonry Construction.

21. Upon information and belief, at all times relevant to this action, additional business entities were part of the Defendants' Masonry Business.

22. At all times relevant to this action, the business entities identified above in paragraphs 20 and 21 above (the "Corporate Entities") have been dominated by the individual defendants, LUIS PUIG, ERICA PUIG, NIDIA PUIG, ALEX PUIG and LEONARD PUIG (the "Puig Family").

23. The Puig Family operated the Corporate Entities as if they were a single company that they controlled completely, moving money, goods, resources and employees between and among the various Corporate Entities at their pleasure.

24. The Corporate Entities are vertically integrated – for example, as of the date this action was filed, EML's website advertised and marketed concrete that was labelled with MMI's logo.

25. Upon information and belief, at all times relevant to this action, the respective control groups (or de facto control groups) of the Corporate Entities have consisted of substantially the same, if not an identical, group of individuals from the Puig Family.

26. Upon information and belief, at all times relevant to this action, the respective administrative staffs of all or most the Corporate Entities have consisted of substantially the same, if not an identical, group of individuals.

27. Upon information and belief, at all times relevant to this action, the records of all or most of the Corporate Entities have generally been kept in the same, central location.

28. Upon information and belief, at all times relevant to this action, the Puig Family has used the same computer, server or computer network, to keep the books of all or most of the Corporate Entities.

29. Upon information and belief, at all times relevant to this action, the respective sets of data, which constitute the books of all or most of the Corporate Entities, have resided on the same computer, server or computer network.

30. Upon information and belief, at all times relevant to this action, the same individual, or group of individuals, has/have performed the routine, day-to-day bookkeeping functions of all or most of the Corporate Entities.

31. The Puig Family's Masonry Business had gross receipts in excess of $500,000.00 in: a) 2014; b) 2015; c) 2016; d) the twelve-month period between and including April 1, 2016 and March 31, 2017; and e) the twelve-month period between and including July 1, 2016 and June 30, 2017.

32. One or more of the following statements is true:

    a. EML had gross receipts in excess of $500,000.00 in: i) 2014; ii) 2015; iii) 2016; iv) the twelve-month period between and including April 1, 2016 and March 31, 2017; and v) the twelve-month period between and including July 1, 2016 and June 30, 2017;

b. PHC had gross receipts in excess of $500,000.00 in: i) 2014; ii) 2015; iii) 2016; iv) the twelve-month period between and including April 1, 2016 and March 31, 2017; and v) the twelve-month period between and including July 1, 2016 and June 30, 2017; and/or

c. MMI had gross receipts in excess of $500,000.00 in: i) 2014; ii) 2015; iii) 2016; iv) the twelve-month period between and including April 1, 2016 and March 31, 2017; and v) the twelve-month period between and including July 1, 2016 and June 30, 2017.

33.    At all times relevant to this action, the Puig Family's Masonry Business employed a structure in which one or two business entities formed the nucleus of a group interrelated and integrated companies.

34.    Upon information and belief, at all times relevant to this action, one of the following Corporate Entities was the nucleus of the Puig Family's Masonry Business, and is the vehicle by which the Puig Family supplied business infrastructure services to the other Corporate Entities: a) EML; b) PHC; c) MMI; or d) another Corporate Entity.

35.    Upon information and belief, at all times relevant to this action, the telephone, internet, and information technology services used by all of the Corporate Entities were procured or paid for by only one of the following Corporate Entities: a) EML; b) PHC; c) MMI; or d) another Corporate Entity.

36.    Upon information and belief, at all times relevant to this action, the utilities (gas, water and electricity) used by all of the Corporate Entities were procured or paid for by only one of the following Corporate Entities: a) EML; b) PHC; c) MMI; or d) another Corporate Entity.

37.     Upon information and belief, the computer software and hardware used to process all of the Corporate Entities' payroll and tax records was procured or paid for by only one of the following Corporate Entities: a) EML; b) PHC; c) MMI; or d) another Corporate Entity.

38.     Upon information and belief, at all times relevant to this complaint, personnel whose wages were paid with checks drawn on accounts held by only one of the Corporate Entities, acted in the interests of the Masonry Business as a whole – for example, personnel who were paid with checks drawn on EML's accounts processed payroll and tax documents for MMI and/or vice versa.

39.     At all times relevant to this action, all members of the Puig Family had the power to: a) direct the Plaintiff's work and that of the Collective Class members; b) set the Plaintiff's work schedules and those of the Collective Class members; c) access and review the Plaintiff's work time and payroll records and those of the Collective Class; d) control the Masonry Business's human resources and payroll functions relative to the Plaintiff and the Collective Class members; and e) hire and fire the Plaintiff and the Collective Class members.

40.     At all times relevant to this action, on a day-to-day basis LUIS PUIG: a) directed the Plaintiff's work and that of the Collective Class members; b) set the Plaintiff's work schedules and those of the Collective Class members; b) maintained the Plaintiff's work time and payroll records and those of the Collective Class members; c) had direct control over the Defendants' human resources and payroll functions relative to the Plaintiff and the Collective Class members; d) often signed the Plaintiff's payroll checks and those of the Collective Class members; and e) actually fired the Plaintiff on or about June 2, 2017.

41.     At all times relevant to this action, on a day-to-day basis ERICA PUIG: a) maintained the Plaintiff's work time and payroll records and those of the Collective Class members; b) had direct control over the Defendants' human resources and payroll functions relative to the Plaintiff and the Collective Class members; and c) often signed the Plaintiff's payroll checks and those of the Collective Class members.

42.     At all times relevant to this action, the Puig Family's Masonry Business operated, controlled and/or constituted an "enterprise" within the meaning of Section 3(r) of the FLSA.

43.     The Plaintiff was employed by one or more of the Defendants[1] as a mechanic and laborer, from 1998 until June 2, 2017, when he was fired by LUIS PUIG.

44.     During the course of his employment by the Defendants, the Plaintiff fixed machines, mixed concrete, moved and stocked materials, and was assigned many other types of work throughout the years that he was employed.

45.     During the course of the Plaintiff's employment by the Defendants, he was variously told by the Puig Family that he was employed by Elston Block Company, MMI and All Masonry Construction.

---

[1] "Plaintiffs plausibly contend that they are unable at this time to specifically identify their employer(s) given the number of individuals and entities involved in the project and the fact that they did not receive pay stubs or other documentation in connection with their employment." *Sanchez v. Haltz Const. Inc.*, 2012 U.S. Dist. LEXIS 537, 2-3. Here, the Plaintiff was told he worked for "All Masonry Construction" when he received checks from MMI, and had received checks from other Corporate Entities at other times while working for the Puig Family's Masonry Business. From the Plaintiff's perspective, he worked for the Puig Family doing substantially the same job from 1998 through June 2, 2017 – and the Puig Family changed the names and structure of the Masonry Business over the years without much effect upon the Plaintiff's role within the Puig Family's Masonry Business.

46.     Most recently, during the last several years of the Plaintiff's employment by the Defendants, the Puig Family told him he was employed by "All Masonry Construction;" however, during this period, he received most if not all of his payroll checks from MMI.

47.     During the course of his employment by the Defendants, the Plaintiff received payroll checks from various Corporate Entities in addition to MMI, including from Elston Block Company (believed to be an old corporate name for PHC).

48.     At all times relevant to this action, the Defendants, and each of them, were the Plaintiff's "employer" within the meaning of Section 3(a) and (d) of the FLSA in that the Defendants acted directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

49.     At all times relevant to this action, the Defendants, and each of them, were the Plaintiff's "employer" within the meaning of Section 3(c) of the IMWL in that the Defendants acted directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

50.     At all times relevant to this action, the Plaintiff was an "employee" of the Defendants within the meaning of Section 3(e)(1) of the FLSA.

51.     At all times relevant to this action, the members of the Collective Class were/are "employees" of the Defendants within the meaning of Section 3(e)(1) of the FLSA.

52.     At all times relevant to this action, the Plaintiff was an "employee" of the Defendants within the meaning of Section 3(d) of the IMWL.

53.     At all times relevant to this action, the Plaintiff was a "covered employee" of within the meaning of Section 1-24-010 of the CMWO.

54.     At all times relevant to this action, the Defendants, and each of them, were the Plaintiff's "employer" within the meaning of Section 1-24-010 of the CMWO.

55.     During the course of their employment by the Defendants, the Plaintiff and the Collective Class members handled/handle goods that moved in interstate commerce including but not limited to Portland cement, silicone and petroleum products.

56.     During the course of their employment by the Defendants, the Plaintiff and the Collective Class were/are not exempt from the maximum hour (overtime) provisions of the FLSA, the IMWL and/or the CMWO.

57.     For at least the last year of his employment by the Defendants, the Plaintiff normally worked 6 days per week: from 6:00 a.m. to 4:30 p.m. (with a half-hour lunch break) Monday through Friday; and from 6:00 a.m. to 12:00 p.m. on Saturday (usually with no lunch break).

58.     The Plaintiff sometimes worked through his lunch breaks and ate while working.

59.     Occasionally, as all employees do, the Plaintiff would take days off and would arrive late or leave early but, for the most part, he kept the schedule described above. Accordingly, the Plaintiff typically worked about 56 hours per week with occasional fluctuations.

60.     For at least the last year of the Plaintiff's employment by the Defendants, the Defendants paid the Plaintiff by the hour.

61.     For at least the last year of the Plaintiff's employment by the Defendants, the Defendants paid the Plaintiff at the rate of $22.50 per hour.

62.     However, the Defendants failed and refused to pay the Plaintiff overtime premiums for the hours he worked in excess of 40 each week – in other words, the Defendants paid the Plaintiff at his "straight" or regular rate for all the hours he worked.

**The Defendants' Scheme to Avoid Paying Overtime Compensation**

63.     The Defendants did not use a punch clock, biometric time clock, or other method by which the Plaintiff could log his own work time.  Instead, the Defendants simply logged the Plaintiff's work time themselves, without input or action by the Plaintiff.

64.     The Defendants often failed to accurately log the Plaintiff's work time.

65.     The Defendants failed to accurately list the number of hours the Plaintiff worked each week on his check stubs.  Instead, during the last year of the Plaintiff's employment, the Defendants listed the number of *days* the Plaintiff worked each week, making it appear as if he were paid by the day instead of by the hour (which is only permissible if an employer calculates and pays an overtime premium separately – but the Defendants did not do so).

66.     At times, the Defendants appeared to pay the Plaintiff by the day (paying him the same amount weekly, even when he worked slightly fewer, or slightly more, hours than 56 in the course of a week); but at other times, the Defendants appeared to pay the Plaintiff by the hour (in that his pay varied in tandem with the fluctuations in his weekly hours).  The

Defendants switched between these two methods seemingly at will and for no reason that was discernable to the Plaintiff while he was employed.[2]

67.     The Defendants intentionally attempted to confuse the Plaintiff and make him believe that he was not entitled to overtime premiums – telling the Plaintiff that he was "salaried," that he was paid by the day and/or that they did not dock his pay unless he were absent for more than half a day.[3]

68.     At other times during the last year of the Plaintiff's employment by the Defendants, however, the Defendants told the Plaintiff that his hourly rate was $22.50.

69.     In the last year of his employment by the Defendants, the Plaintiff's gross weekly pay was usually $1,260.00 (which equals 56 hours at the straight rate of $22.50/hour).

70.     The Defendants failed to list the Plaintiff's hourly rate on the Plaintiff's pay stubs.  Upon information and belief, they failed to list the rate so that, in the event they were ever faced with a claim like this one, they might falsely claim after the fact that the Plaintiff's rate was lower than it actually was.

71.     In any case, the Plaintiff was not exempt under the FLSA, the IMWL or the CMWO, and the Defendants were required to pay him overtime premiums for the hours he worked in excess of 40 each week – whether or not they paid the Plaintiff on "salary," by the day, or by the hour.

---

[2] The apparent difference could simply have been the result of the Defendants' random failure/s to accurately track the Plaintiff's hours in a particular week.

[3] However, in these circumstances, the Defendants often – but not always – *did* dock the Plaintiff's pay on an hourly basis even though they told the Plaintiff they did not

72.     Until he retained counsel, the Plaintiff was unaware of his rights under the FLSA, the IMWL and the CMWO.

73.     The Defendants failed to display a poster, or any other literature, that would have apprised the Plaintiff of his rights under the FLSA, the IMWL and the CMWO and, as a result, applicable statutes of limitation were tolled under the doctrine announced in *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3d Cir. 1978) (see also *Chavez v. Don Stoltzner Mason Contr., Inc.*, 2010 U.S. Dist. LEXIS 33289 (Aspen, J.), *Cisneros v. Jinny Beauty Supply Co., Inc.*, 2004 U.S. Dist. LEXIS 2094 (Grady, J.) and *Cortez v. Medina's Landscaping*, 2002 U.S. Dist. LEXIS 18831 (Gottschall, J.).

74.     The Defendants used the methods described above as part of their scheme to avoid paying the Plaintiff and other employees overtime compensation at the rates required by law.

75.     The Defendants used/use the same unlawful payroll practices relative to the Collective Class members as they did with the Plaintiff.

76.     The Plaintiff is aware of at least five other employees of the Defendants who did work that was similar to his own, and whom the Defendants paid in the same manner as they paid him.  These five employees are members of the Collective Class.

77.     Upon information and belief, the Defendants continue the practice of failing to pay overtime premiums to the Collective Class members through the present day.

## COUNT I
### (Violation of the FLSA)

78.     The Plaintiff re-alleges the foregoing paragraphs.

79.     Among other ways, the Defendants violated the FLSA by:

a. failing to pay the Plaintiff at a rate not less than one and one-half times his regular hourly rate for the overtime hours (in excess of 40 in any given week) he worked;

b. failing to provide the Plaintiff with pay stubs that accurately listed his hourly wage rate and the number of hours he worked each week;

c. failing to accurately record the number of hours that the Plaintiff worked each week; and

d. failing to hang and display a poster in a prominent location accessible to the Plaintiff, which poster would have informed the Plaintiff of his rights under the FLSA.

80. Among other ways, the Defendants also violated the FLSA by:

e. failing to pay the Collective Class members at rates not less than one and one-half times their respective, regular, hourly rates for the overtime hours they worked;

f. failing to provide the Collective Class members with pay stubs that accurately listed/list their respective hourly wage rates and the number of hours they worked/work each week;

g. failing to accurately record the number of hours that the Collective Class members worked/work each week; and

h. failing to hang and display a poster in a prominent location accessible to the Collective Class members, which poster would have informed the Collective Class members of their rights under the FLSA.

81. The Defendants' violation of the FLSA was willful in that the Defendants were aware or should have been aware of their obligations under the FLSA, but nevertheless attempted to circumvent its provisions.

82. The Defendants failed to take affirmative steps to ascertain their obligations under the FLSA.

WHEREFORE the Plaintiff, on behalf of himself and the Collective Class, prays for judgment in his favor and against the Defendants, and each of them, and for the following relief:

A. damages in an amount equal to the unpaid overtime compensation due and owing to the plaintiffs for each hour the plaintiffs worked in excess of 40 in any given week, but for which the Defendants failed to pay the plaintiffs at rates not less than one and one-half times their respective, regular, hourly rates (in no case less than one and one-half times the CMWO's mandatory minimum rate);

B. statutory liquidated damages as allowed by the FLSA;

C. interest on all amounts awarded;

D. attorneys' fees, together with costs of suit and collection; and

E. such further relief as may be fair and just in the premises.

## COUNT II
### (Violation of the IMWL)

83.    The Plaintiff re-alleges the foregoing paragraphs.

84.    Any and all Collective Class members who join this action under the "opt-in" procedure set forth in 29 U.S.C. 216(b) will also affirmatively adopt the allegations in this Count II.

85.    Among other ways, the Defendants violated the IMWL by:

a. failing to pay the Plaintiff at a rate not less than one and one-half times their respective, regular, hourly rates for the overtime hours they worked;

b. failing to provide the Plaintiff with pay stubs that accurately listed his hourly wage rate and the number of hours he worked each week;

c. failing to accurately record the number of hours that the Plaintiff worked each week; and

d. failing to hang and display a poster in a prominent location accessible to the Plaintiff, which poster would have informed the Plaintiff of his rights under the IMWL.

86. The Defendants were aware or should have been aware of their obligations under the IMWL, but nevertheless attempted to circumvent its provisions.

87. The Defendants failed to take affirmative steps to ascertain their obligations under the IMWL.

WHEREFORE the Plaintiff prays for judgment in his favor and against the Defendants, and each of them, and for the following relief:

A. damages in an amount equal to the unpaid overtime compensation due and owing to the Plaintiff for each hour the Plaintiff worked in excess of 40 in any given week, but for which the Defendants failed to pay the Plaintiff at a rate not less than one and one-half times his regular, hourly rate (in no case less than one and one-half times the CMWO's mandatory minimum rate);

B. statutory punitive damages as allowed by the IMWL;

C. interest on all amounts awarded;

D. attorneys' fees, together with costs of suit and collection; and

E. such further relief as may be fair and just in the premises.

## COUNT III
### (Violation of the CMWO)

88. The Plaintiff re-alleges the foregoing paragraphs.

89. Any and all Collective Class members who join this action under the "opt-in" procedure set forth in 29 U.S.C. 216(b) will also affirmatively adopt the allegations in this Count III.

90. Among other ways, the Defendants violated the CMWO by:

e. failing to pay the Plaintiff at a rate not less than one and one-half times their respective, regular, hourly rates for the overtime hours they worked;

f. failing to provide the Plaintiff with pay stubs that accurately listed his hourly wage rate and the number of hours he worked each week;

17

g. failing to accurately record the number of hours that the Plaintiff worked each week; and

h. failing to hang and display a poster in a prominent location accessible to the Plaintiff, which poster would have informed the Plaintiff of his rights under the CMWO.

91. The Defendants were aware or should have been aware of their obligations under the CMWO, but nevertheless attempted to circumvent its provisions.

92. The Defendants failed to take affirmative steps to ascertain their obligations under the CMWO.

WHEREFORE the Plaintiff prays for judgment in his favor and against the Defendants, and each of them, and for the following relief:

F. damages in an amount equal to the unpaid overtime compensation due and owing to the Plaintiff for each hour the Plaintiff worked in excess of 40 in any given week, but for which the Defendants failed to pay the Plaintiff at a rate not less than one and one-half times his regular, hourly rate (in no case less than one and one-half times the CMWO's mandatory minimum rate);

G. treble damages as allowed by the CMWO;

H. interest on all amounts awarded;

I. attorneys' fees, together with costs of suit and collection; and

J. such further relief as may be fair and just in the premises.

## JURY DEMAND

The Plaintiff demands a trial by jury of all issues set forth herein that are capable of being tried by a jury.

Respectfully submitted,

/s/Paul Luka
One of the Plaintiff's Attorneys

Paul Luka
MENDOZA LAW, P.C.
120 S. State Street, Suite 400
Chicago, IL 60603
(312) 508-6010
paul@alexmendozalaw.com

# EXHIBIT A

## CONSENT TO BE A PARTY PLAINTIFF

The undersigned hereby authorizes and engages Mendoza Law, P.C. to pursue his/her claims for unpaid wages, and other relief, against Max-Mix, Inc., All Masonry Construction, Luis Puig, Erica Puig, Nidia Puig, and any other person/s who may have employed him/her in conjunction with said person/s (collectively the "Employers"), and by the signature below the undersigned hereby consents to be a party plaintiff in a lawsuit brought against the Employers on behalf of him/herself and all other similarly situated employees, known and unknown, pursuant to 29 U.S.C. 216(b).

_____
Signature

_____
Print Name